**SEALED**

FILED
2021 MAR 3 AM 7:08
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DP CREATIONS, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>REBORN BABY WORLD, *et al.*,<br><br>   Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S EX PARTE MOTION TO FILE UNDER SEAL AND EX PARTE MOTION FOR EXPEDITED DISCOVERY AND SERVICE BY ALTERNATE MEANS**<br><br>**FILED UNDER SEAL**<br><br>Case No. 2:21-cv-00088-JNP-JCB<br><br>District Judge Jill N. Parrish |

Before the court are two motions filed by Plaintiff DP Creations, LLC d/b/a Bountiful Baby ("Bountiful Baby" or "Plaintiff"): an Ex Parte Motion for Leave to File Under Seal (ECF No. 2) and an Ex Parte Motion for Expedited Discovery and Service by Alternate Means (ECF No. 7). Having reviewed the memoranda, the court grants both Motions.

## BACKGROUND

Bountiful Baby is a Utah limited liability company with a principal place of business at 2140 South 3600 West, West Valley City, Utah. Bountiful Baby does business in the District of Utah, has numerous employees and customers in the District of Utah, and has allegedly suffered injury in the District of Utah. Defendants Reborn Baby World and Shenzhen Qianhai Topology Information Technology Co., Ltd. (collectively, "RBW" or "Defendants") are unknown Chinese entities. RBW operates through its website at the URL www.RebornBabyWorld.com, accepts

PayPal payments through email addresses at payment@tuoputech.com and pinping.wu@loonxi.com, and corresponds with customers through an email address at contact@rebornbabyworld.com.

Bountiful Baby specializes in selling kits and supplies for the making of "reborn dolls," which are known for their realism and are almost indistinguishable from a real baby. Bountiful Baby alleges that RBW sells counterfeit Bountiful Baby products on its website and misleads consumers by using Bountiful Baby's copyrighted images and business information. RBW's products are not affiliated with Bountiful Baby. Bountiful Baby sues RBW for copyright infringement, false designation of origin, unfair competition, and deceptive trade practices.

## PERSONAL JURISDICTION

At the pleadings stage, a plaintiff need only establish a *prima facie* showing of personal jurisdiction. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008). Bountiful Baby has alleged that RBW offers the products at issue for sale across the United States, including in Utah. Additionally, Bountiful Baby alleges that RBW's payment page includes a dropdown menu that lists Utah as a location from which orders of RBW's products may be shipped and sold. The inclusion of Utah in the drop-down list of states and the availability of shipment of orders to any state in the United States are sufficient to establish specific personal jurisdiction under the "stream of commerce" theory and that RBW's site is "something more" than a non-targeted transaction site. *Orbit Irrigation Prods., Inc. v. Melnor, Inc.*, No. 1:16-cv-137, 2017 WL 1274043, at *3–4 (D. Utah Apr. 4, 2017) (unpublished); *Zing Bros., LLC v. Bevstar, LLC*, No. 2:11-cv-00337, 2011 WL 4901321, at *2–3 (D. Utah Oct. 14, 2011) (unpublished). Additionally, given RBW's minimum contacts, the court finds that the exercise of personal jurisdiction over RBW does not offend traditional notions of substantial justice and fair play, satisfying the

requirements of due process. Accordingly, Bountiful Baby has made a sufficient showing of personal jurisdiction at this stage of the proceedings.

## DISCUSSION

### I. MOTION TO SEAL

Bountiful Baby seeks to have these proceedings temporarily sealed under DUCivR 5-2(c)(1).[1] "Courts have long recognized a common-law right of access to judicial records." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007). "[T]he presumption in favor of access to judicial records may be overcome where 'countervailing interests heavily outweigh the public interests in access.'" *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1241 (10th Cir. 2012) (citation omitted). "'The party seeking to overcome the presumption' of public access to the documents 'bears the burden of showing some significant interest that outweighs the presumption.'" *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011) (citation omitted). The proponent of a motion to seal "must articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *Colony Ins.*, 698 F.3d at 1242 (citation omitted). In resolving a motion to seal, a district court must "weigh the interests of the public, which are presumptively paramount, against those advanced by the parties." *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (quoting *Helm*, 656 F.3d at 1292). The District of Utah's Local Rules reinforce that "[c]ourt records are presumptively open to the public," and "the sealing of civil cases is highly discouraged." DUCivR 5-2(a).

---

[1] The court notes that Bountiful Baby cites DUCivR 5-2(b) and (b)(1) as the rule under which it is seeking to temporarily seal its case, but the relevant rule is DUCivR 5-2(c)(1).

Bountiful Baby bears a heavy burden in moving to temporarily seal this case. Although Bountiful Baby's motion is substantially devoid of relevant legal authority, citing only to the Local Rule pertaining to sealing a case and unpublished case law addressing asset freezing, the court finds that Bountiful Baby's allegations related to the necessity of this temporary seal are sufficient. Bountiful Baby alleges that RBW operates www.RebornBabyWorld.com, a website that sells counterfeit Bountiful Baby products and uses Bountiful Baby's copyrighted images and business information to sell the counterfeit products. Bountiful Baby alleges that if RBW learns of this proceeding initiated against it, RBW may immediately dissipate its assets through electronic transfers directed to foreign jurisdictions. Bountiful Baby alleges that such actions would frustrate the purpose of the laws under which it is suing RBW and would also hamper the court's power to grant relief. Thus, Bountiful Baby seeks a temporary sealing of these proceedings until its motions for injunctive relief and an asset freeze are resolved, any orders related to those motions are served on the relevant parties, and the temporary restraining order and asset freeze are in place.

Although there is a presumption in favor of allowing access to judicial records, Bountiful Baby has demonstrated that its interests in preserving its ability to obtain preliminary and ultimately permanent relief are real and substantial. Thus, given the circumstances of this case and the temporary nature of the requested seal, the court grants Bountiful Baby's Ex Parte Motion for Leave to File Under Seal (ECF No. 2).

## II. MOTION FOR EXPEDITED DISCOVERY AND SERVICE BY ALTERNATE MEANS

### A. Expedited Discovery

Bountiful Baby moves ex parte for expedited discovery of RBW's financial information. Generally, "[a] party may not seek discovery from any source before the parties have conferred as

required by Rule 26(f)." FED. R. CIV. P. 26(d). However, the court may expedite discovery upon a showing of "good cause for departing from the usual discovery procedures" by the party seeking expedited discovery. *Living Scriptures v. Doe(s)*, No. 1:10 cv 0182, 2010 WL 4687679, at *1 (D. Utah Nov. 10, 2010) (unpublished). "The good cause standard may be satisfied where a party seeks a preliminary injunction or where the moving party has asserted claims of infringement and unfair competition." *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003) (citations omitted). "Expedited discovery may also be appropriate in cases where physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation." *Id.* (citation omitted).

Here, Bountiful Baby seeks expedited discovery to uncover financial information that will help to preserve the status quo and give effect to the asset freeze that it seeks. Bountiful Baby has produced evidence that RBW uses PayPal to process payments for consumer purchases of the products at issue. Bountiful Baby avers that it does not know the identity or location of the banks or other financial institutions to which PayPal transfers funds resulting from RBW's sales, and without expedited discovery, it will not know the persons or entities upon which to serve the temporary restraining order and asset freeze.[2] Bountiful Baby argues that RBW may then dissipate its funds before relief is granted to Bountiful Baby. Because the court grants Bountiful Baby's requested asset freeze and finds good cause for Bountiful Baby's request for expedited discovery

---

[2] Under Federal Rule of Civil Procedure 65(d)(2), the court has authority to bind "(A) the parties;" "(B) the parties' officers, agents, servants, employees, and attorneys;" and "(C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)" to a temporary restraining order. FED. R. CIV. P. 65(d)(2). Since PayPal is a participant in the processing of RBW's sales, the court finds that it may bind PayPal by this Order.

to effectuate that asset freeze, the court grants Bountiful Baby's Ex Parte Motion for Expedited Discovery (ECF No. 7).

B.     Service by Alternate Means

Bountiful Baby also moves ex parte for an order authorizing it to serve RBW by email. Federal Rule of Civil Procedure 4(h)(2) provides that a "foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name," may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual." FED. R. CIV. P. 4(h)(2).[3] Under Rule 4(f)(3), an individual may be served in a foreign country "by other means not prohibited by international agreement, as the court orders." *Id.* 4(f)(3).[4] The party seeking service by alternate means "need[] only to demonstrate that the facts and circumstances of the present case necessitate[] the district court's intervention." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002). The alternate means of service authorized by the court must comport with due process. *Id.* Due process requires service of process that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

---

[3] Bountiful Baby seeks a court order to serve RBW by email under Rule 4(f)(3). However, the proper basis upon which to seek alternate service by email in this case is Rule 4(h)(2), which in turn permits service on a foreign corporation, partnership, or association "in any manner prescribed by Rule 4(f) for serving an individual." FED. R. CIV. P. 4(h)(2).

[4] The Ninth Circuit has held that Rule 4(f) does not "create a hierarchy of preferred methods of service of process." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014–15 (9th Cir. 2002). Thus, a party need not first attempt to serve an opposing party through methods stated in Rule 4(f)(1) or (f)(2) before resorting to Rule 4(f)(3). *Id.* The Ninth Circuit found support for this position in the language and structure of Rule 4(f), which separates each of the three service options by the disjunctive "or," and in the advisory committee notes. *Id.*

Bountiful Baby argues that service of process on RBW by email is appropriate, not prohibited by international agreement, and reasonably calculated to give notice to RBW. Bountiful Baby alleges that RBW primarily communicates with its customers, domain registrars, and web hosts through electronic communication[5] and that service by email would permit RBW to be promptly notified of the pending action. Bountiful Baby also argues that service by email is a valid alternative means of effecting service and that service sent to the email that RBW provides on its website is reasonably calculated to provide notice of this lawsuit. Without a court order authorizing service of process by email, Bountiful Baby argues that it will likely be unable to pursue final judgment against RBW.

The Tenth Circuit has not decided whether service by email is proper under Rule 4(f)(3). However, other circuits and district courts have found that Rule 4(f)(3) permits service by email in certain circumstances. *Rio Properties* is a seminal case regarding service by email under Rule 4(f)(3) and is instructive here. In *Rio Properties*, the Ninth Circuit affirmed a district court's "proper[] exercise[] [of] its discretionary powers to craft alternate means of service" in permitting service of process by email on "an elusive international defendant, striving to evade service of process." 284 F.3d at 1016. The Ninth Circuit concluded "[w]ithout hesitation" that service of process by email met the constitutional requirement of due process and was also the method of service most likely to reach the foreign defendant company. *Id.* at 1017. This was because the foreign defendant company "ha[d] embraced the modern e-business model and profited immensely

---

[5] Bountiful Baby alleges that RBW engages in ecommerce and maintains email addresses from which it conducts its economic business: RBW's website provides the email address contact@rebornbabyworld.com for customers to contact RBW, and RBW accepted payments from customers at PayPal accounts associated with the email addresses payment@tuoputech.com and pingping.wu@loonxi.com.

from it," and even "structured its business such that it could be contacted *only* via its email address" and had "no easily discoverable street address in the United States or in Costa Rica." *Id.* at 1017–18. The Ninth Circuit remarked that "when faced with an international e-business scofflaw, playing hide-and-seek with the federal court, email may be the only means of effecting service of process." *Id.* at 1018. Still, the court acknowledged the "limitations" inherent in service of process by email:

> In most instances, there is no way to confirm receipt of an email message. Limited use of electronic signatures could present problems in complying with the verification requirements of Rule 4(a) and Rule 11, and system compatibility problems may lead to controversies over whether an exhibit or attachment was actually received. Imprecise imaging technology may even make appending exhibits and attachments impossible in some circumstances. We note, however, that, except for the provisions recently introduced into Rule 5(b), email service is not available absent a Rule 4(f)(3) court decree. Accordingly, we leave it to the discretion of the district court to balance the limitations of email service against its benefits in any particular case.

*Id.* (footnote and citation omitted). Additionally, in *Cisco Systems, Inc. v. Shenzhen Usource Technology Co.*, service by email under Rule 4(f)(3) on foreign defendants based in China was proper when the defendants "operate[d] [an] Internet-based businesses trafficking in counterfeit [plaintiff] products[,] . . . provide[d] email addresses for communication, and . . . ultimately negotiated and consummated transactions for sale of the infringing products . . . via email." No. 5:20-cv-04773, 2020 WL 5199434, at *15 (N.D. Cal. Aug. 17, 2020) (unpublished). Further, the "urgency in shutting down the sales of [the counterfeited products] that threaten[ed] [the plaintiff's] reputation" weighed in favor of permitting service of process by email. *Id.*

The court is ultimately persuaded by Bountiful Baby's argument and accordingly grants Bountiful Baby's Motion for Service by Alternate Means (ECF No. 7). First, the court finds that

the Hague Convention[6] does not prohibit service of process by email. *See Neck Hammock, Inc. v. Danezen.com*, No. 2:20-CV-287, 2020 WL 6364598, at *4–5 (D. Utah Oct. 29, 2020) (unpublished) (concluding that "email service is not prohibited by international agreement," even though China had objected to service by postal channels under Article 10 of the Hague Convention, and "email service can comport with constitutional notions of due process"); *Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 379 n.2 (S.D.N.Y. 2018) (noting that service by email on a Chinese defendant does not violate the Hague Convention even though China had objected to service by postal channels under Article 10 of the Hague Convention); *Cisco Sys.*, 2020 WL 5199434, at *14 ("[S]ervice by email on defendants in China is not barred by any international agreement."); *Microsoft Corp. v. Goldah.com Network Tech. Co.*, No. 17-CV-02896, 2017 WL 4536417, at *4 (N.D. Cal. Oct. 11, 2017) (unpublished) (finding that email service was not prohibited under the Hague Convention even though China had objected to service by postal channels under Article 10); *Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C 06-06572, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (unpublished) (concluding that "service via email is not prohibited by an international agreement").

Second, the court finds that email will likely be the best way to effect service of process on RBW. Unlike the defendant in *Rio Properties*, RBW has provided a physical address on its website; however, Bountiful Baby suggests that this is a fraudulent address because it is nearly identical to

---

[6] Bountiful Baby indirectly suggests that the Hague Convention is the relevant "international agreement" referenced in Rule 4(f)(3). *See* ECF No. 7 at 11–12. Both the United States and China are signatories to the Hague Convention. *HCCH Members*, HAGUE CONFERENCE ON PRIVATE INTERNATIONAL LAW, https://www.hcch.net/en/states/hcch-members (last visited Mar. 2, 2021). Accordingly, the court will evaluate the Hague Convention in determining whether the requirements set forth in Rule 4(f)(3) would be satisfied by service of process by email.

Bountiful Baby's Utah address and is only meant to imply a connection to Bountiful Baby. Accordingly, the court does not find that service upon this address is likely to put RBW on notice of the pending lawsuit. Additionally, Bountiful Baby provides evidence that the domain name registration information for RBW's website reveals only an anonymous registrant. Thus, service of process by email seems to be the most likely means by which to effect service of process and put RBW on notice of Bountiful Baby's lawsuit against it. *See In re Int'l Telemedia Assocs., Inc.*, 245 B.R. 713, 719–21 (Bankr. N.D. Ga. 2000) (authorizing service of process by email under Rule 4(f)(3) when email was one of the only feasible methods of serving the opposing party, and the parties had previously communicated via email). RBW has provided a contact email address on its website. *ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*, No. 11-CV-05149, 2012 WL 3580670, at *2 (N.D. Cal. Aug. 17, 2012) (unpublished) (holding that service by email to "the contact email address that is listed on [the defendant's] website" was "not only reasonably calculated to provide actual notice . . . but the method most likely to apprise [defendants] of this action"). Moreover, because RBW is an e-commerce and foreign-based company, service of process by email on RBW is likely "the only means of effecting service of process." *Rio Props.*, 284 F.3d at 1018.

Finally, although service of process by email is appropriate and comports with due process in this case, an additional safeguard should be put in place to ensure due process. Specifically, Bountiful Baby is ordered to provide the court with any indication that it receives from its email provider that the email sent to RBW is returned or otherwise not received. *See id.* ("In most instances, there is no way to confirm receipt of an email message. . . . [W]e leave it to the discretion of the district court to balance the limitations of email service against its benefits in any particular case."); *Cisco Sys.*, 2020 WL 5199434, at *14 (observing that courts in the Northern District of California "have authorized email service and found that it is reasonably calculated to provide

notice to foreign defendants, including defendants based in China, where receipt is confirmed, the email addresses were previously used to communicate with the plaintiffs, or the defendants operate online and use email for their businesses."); *see also Liberty Media Holdings, LLC v. Sheng Gan*, No. 11-cv-02754, 2012 WL 122862, at *4 (D. Colo. Jan. 17, 2012) (unpublished) (allowing plaintiff to supplement its motion to file service of process by email with a proposed method of service that "would further assure that the email message featuring Plaintiff's complaint and summons is actually received").

## CONCLUSION AND ORDER

Based upon the foregoing findings, the court HEREBY ORDERS as follows:

(1) Plaintiff's Ex Parte Motion for Leave to File Under Seal (ECF No. 2) is GRANTED. The clerk shall maintain these proceedings under seal pending further order of the court. Plaintiff shall promptly move the court to unseal these proceedings once any orders related to its motions for a temporary restraining order and asset freeze are served on the relevant parties and the temporary restraining order and asset freeze are in place.

(2) Plaintiff's Ex Parte Motion for Expedited Discovery and Service by Alternate Means (ECF No. 7) is GRANTED. Plaintiff is permitted to seek discovery from PayPal regarding financial accounts relevant to the instant dispute on an expedited basis. Once the asset freeze and financial discovery ordered herein are completed, Plaintiff may provide service of process to Defendants pursuant to Federal Rule of Civil Procedure 4(f)(3) at the following email addresses previously identified in this Order: payment@tuoputech.com; pinping.wu@loonxi.com; and contact@rebornbabyworld.com. Plaintiff must provide the court with any indication that it receives from its email provider that the email sent to RBW is returned or otherwise not received.

DATED March 3, 2021.

BY THE COURT

*Jill N. Parrish*

_____
Jill N. Parrish
United States District Court Judge